**UNITED STATES of America**
v.
**Stuart Birdsey SMITH.**
**Crim. No. 13049.**

United States District Court,
D. Connecticut.
March 27, 1972.

Peter A. Clark, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Alfonse C. Fasano, New Haven, Conn., for defendant.

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS

NEWMAN, District Judge.

The defendant, Stuart B. Smith, is charged with robbery of the State National Bank in Milford, Connecticut, on July 30, 1971. He has filed a motion to suppress various items of evidence seized at various locations by officers of the Wallingford Police Department and an agent of the Federal Bureau of Investigation during the early morning hours of July 31. A hearing was held on February 16, at which testimony was received from Sergeant Darrell York and Lieutenant John J. Cei of the Wallingford Police Department, Agent Thurl Stalnaker of the Federal Bureau of Investigation, the defendant and his wife. Four separate seizures are involved: (1) money taken from defendant's person, (2) a radio scanner and items of clothing taken from his car, (3) guns, ammunition and other items taken from his home and (4) items of clothing taken from his wife's car. The facts that I find to be established and the lawfulness of each seizure will be considered separately.

1. Between midnight and 1 a. m. on the morning of July 31, Sergeant York was parked in his police cruiser on Old Colony Road in Wallingford. He observed the defendant driving his car in a southbound direction. Defendant's car was weaving along the road. Believing the defendant to be driving under the influence of drugs or alcohol, Sergeant York, with his siren on and red light flashing, chased the defendant's car for about a quarter of a mile to apprehend him. At the start of the pursuit, Sergeant York radioed to his headquarters a report of a "signal three operator," indicating a drunk driver. While in pursuit, he continued to observe defendant's car swerving all over the road. The police car pulled along side as defendant's car slowed to a stop off the side of the road. Sergeant York got out, approached the driver's window and asked the defendant for his license and registration. He observed the defendant look for the papers and noticed that he had extreme difficulty performing the physical movements necessary to obtain the registration from the glove compartment. Finally, he asked the defendant to get out. The odor of alcohol was noticeable coming both from the defendant and from the interior of his car. A glass was observed on the floor of the car. The defendant had difficulty standing up, and his speech was slurred. Sergeant York placed the defendant under arrest for drunk driving. The defendant was patted down for weapons, but, at that point, no other search of his person or the car was made, nor was anything seized. During these events a second police cruiser, which had heard Sergeant York's radio report, arrived on the scene.

The defendant was then placed in the police cruiser and driven to the Wallingford police station. His car was left where it had stopped, off the road on the premises of a business establishment.

At the police station, the defendant was asked to take a breath test for sobriety; he refused. Bond on the drunk driving charge was set at $500, for lack of which the defendant was placed in the lock-up in the police station. Prior to placing him in the cell, Sergeant York made a thorough search of the defendant's person and, in accordance with regular police practice, removed for safe-keeping all his personal effects and any items of apparel that might be used to inflict injury. The only item that fell into this second category was the defendant's shoelaces, since he was not wearing a belt when arrested. Among the personal effects was $379 in cash taken from his trouser pockets. The personal effects were inventoried and placed in an evidence envelope. Sergeant York's purpose in removing the money was to avoid any later claim that the defendant, while in his cell and under the influence of alcohol, had flushed his money down the toilet.

Shortly after the defendant was placed in a cell, Lieutenant Cei, officer in command of the Wallingford Police Detective Division, who had been working on the second floor of the police station, came down to leave and noticed the police cars in the driveway. This indicated to him that someone had recently been brought in. Upon inquiring, he was told that Stuart B. Smith, the defendant, had been arrested for drunk driving. On July 30, Lieutenant Cei had been alerted by police teletype to the fact that the State National Bank in Milford had been robbed that morning. A second police teletype advised that the defendant was one of the suspects in the robbery. During that day, Lieutenant Cei learned from Agent Stalnaker that the suspects had taken from the bank "bait money", i. e., bills with known serial numbers. Lieutenant Cei obtained from Sergeant York the $379 that had been taken from the defendant and went upstairs to call Agent Stalnaker. He asked Stalnaker for the serial numbers of the bait money and discovered that four of the $20 bills taken from the defendant were part of the bait

money. Lieutenant Cei then went down to the defendant's cell and placed him under arrest for possession of stolen goods.

■ The defendant's essential attack upon the validity of the seizure of the money is that the drunk driving arrest was in reality a pretext to stop and search him to see if he could be connected to the State National Bank robbery. The evidence, however, overwhelmingly establishes that the entire incident was a bona fide instance of serendipity. The police had ample probable cause to believe that defendant was driving under the influence of alcohol. At the hearing the defendant never denied his drinking nor the manner of his driving. The arrest for drunk driving was entirely valid. Moreover, while Lieutenant Cei had been alerted to defendant's status as a suspect in the bank robbery, Sergeant York and the other officers of the Patrol Division had not, and none of the officers involved in defendant's arrest had received any instructions concerning the defendant.

■ But the validity of the arrest does not necessarily determine the propriety of the seizure of the $20 bills made by Sergeant York, nor the ultimate use of them that was made by Lieutenant Cei. Generally a person lawfully arrested may be subjected to a search of the contents of his pockets, United States v. Kirschenblatt, 16 F.2d 202, 203 (2d Cir. 1926); Charles v. United States, 278 F.2d 386, 388–389 (9th Cir. 1960), cert. denied 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed. 2d 59 (1960), but this principle may well not apply to arrests for minor traffic offenses. Amador-Gonzalez v. United States, 391 F.2d 308, 315 (5th Cir. 1968). Once a pat down has established the absence of weapons, the justification for further search must turn on the likelihood of carefully concealed weapons or the presence of instrumentalities or evidence of the crime for which the defendant was arrested. Arrests for driving under the influence of alcohol or drugs have been recognized to permit searches for items relating to these offenses. *Id.*

at 316, n. 8; see Annotation, 10 A.L.R.3d 314. While a search of pockets, following a pat down for weapons, is not needed to locate liquor on the defendant's person, it is justified to find other evidence of the crime, such as a paper napkin, match cover or swizzle stick from a bar where the defendant may have been drinking. The fact that the defendant was searched at the police station, within an hour after his arrest, rather than at the scene of arrest does not impair the validity of the search of his person. United States v. Caruso, 358 F.2d 184, 185 (2d Cir. 1966), cert. denied 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966); United States v. DeLeo, 422 F.2d 487, 493 (1st Cir. 1970), cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); United States v. Williams et al., 416 F.2d 4, 8–9 (5th Cir. 1969), cert. denied, 397 U.S. 968, 90 S.Ct. 1008, 25 L.Ed.2d 262 (1970). The search of the defendant's pockets is therefore valid as incident to his arrest for drunk driving.

Furthermore, it was entirely reasonable for the police to remove from the defendant his personal effects for safekeeping before placing him in a cell. *See* United States v. Lipscomb, 435 F.2d 795, 800 (5th Cir. 1970), cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). This guards against later false claims of loss or theft. And, in a jail, money is usually considered to be contraband which must be removed from a prisoner because of the improper purposes to which it may be put.

The question then arises whether Lieutenant Cei had the right to make investigatory use of the four $20 bills. Defendant contends that even if the initial seizure was valid, once the money was placed in an evidence envelope for safe-keeping, it could not be examined without a search warrant. As stated above, the seizure was valid as a search incident to arrest and as a search conducted administratively before the defendant was locked in a cell. Where property has been validly seized in a search incident to an arrest, the fourth amendment does not prohibit police from taking a second look at the same items. Westover v. United States, 394 F.2d 164, 165 (9th Cir. 1968) (bait money); Evalt v. United States, 382 F.2d 424, 427 (9th Cir. 1967) (money); Baskerville v. United States, 227 F.2d 454, 456 (10th Cir. 1955) (identification card). While police examination of items lawfully seized may, in some situations, include even reading of private papers, United States v. Frankenberry, 387 F.2d 337, 339 (2d Cir. 1967); Cotton v. United States, 371 F.2d 385, 392–393 (9th Cir. 1967), there can be no doubt that the police may look a second time at written matter that was in plain view at the time a seizure is made. The serial numbers on the bills were in plain view when they came into the lawful custody of the police. To the extent that the seizure was based on the custodial search, investigatory use of the bills was also valid. United States v. Lipscomb, *supra*. While examination of such property may be improper when additional searching is required, Brett v. United States, 412 F.2d 401, 405–406 (5th Cir. 1969), that problem is not presented here since inspection of the bills by Lieutenant Cei required no further search or examination not already performed by Sergeant York. In rejecting a search of the pockets of a jailed prisoner's clothing, *Brett, supra*, distinguished cases like *Westover, supra, Evalt, supra*, and *Baskerville, supra*, on the ground that the money and identification card there examined were in plain view when seized.

2. Having determined that the $20 bills were part of the bait money, Lieutenant Cei, accompanied by Agent Stalnaker, drove at 2:30 a. m. to the location on Old Colony Road where the defendant's car had been left and drove it back to the police station. Lieutenant Cei searched the car either on Old Colony Road or at the police station right after he drove it in. He observed, in the glove compartment, a radio scanner, tuned to police radio frequencies, and, on the car seats and floor, a wire hanger, and items of clothing. These items were not removed until 7:15 p. m. that evening when

Detective Butka, at Lieutenant Cei's direction, inventoried the contents of the car.

■ The seizure of the items from the defendant's car was valid based on probable cause to search the car for instrumentalities or evidence of the crime of drunk driving. Sergeant York, at the time of the drunk driving arrest, detected the odor of alcohol coming from the car and saw a glass on the floor. He had probable cause to believe that there was liquor in the car. This probable cause would have justified a search of the car at the time of arrest and, upon the incarceration of the defendant, a seizure to remove it from business premises, where Sergeant York testified it would be an obstruction when the business establishment opened the following morning. Lieutenant Cei, to whom Sergeant York had reported the facts concerning the defendant's arrest, had as much right to search the car as Sergeant York had. The fact that the search occurred a short time after the arrest when the defendant was in custody does not impair the search without warrant of a car which police had probable cause to search at the time of the arrest and which they were justified in removing. Chambers v. Maroney, Correctional Superintendent, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *Cf.* United States v. Squires, 456 F.2d 967 (2d Cir. 1972). Defendant's reliance on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) and Dyke et al. v. Taylor Implement Manufacturing Co. Inc., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), is misplaced. There, searches of cars were sought to be justified as incident to arrests. Here there existed probable cause to search the car.

Moreover, by the time of the search, Lieutenant Cei also had probable cause to search the car for items connected with the crime of possession of stolen goods. Having checked the serial numbers of the $20 bills found on the defendant, he had reason to believe that other money taken from the bank might be located in the car which the defendant was driving when arrested. While this probable cause did not exist at the time of the defendant's arrest for drunk driving, it arose within an hour thereafter, by which time the defendant was rearrested in his cell for possession of stolen goods. The thrust of Chambers v. Maroney, *supra,* indicates that under all the circumstances here the warrantless search of the car for items connected with the possession of stolen goods crime was not unreasonable.

■ Finally, the seizure of items from the car was proper pursuant to the inventorying of the contents of the car. With the defendant in custody and his car on private property, the police had ample reason to remove the car to the police station for safe-keeping. Under normal police procedures, it was reasonable to inventory the contents to guard against later claims of loss or theft. *Cf.* Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The justification for the inventory validates the seizure of all the items removed, since the relationship of each to criminal activity was apparent as soon as the item was observed, without the need for examination of the contents of papers or other private items.

■ 3. At 3 a. m. on the morning of July 31, Lieutenant Cei and Agent Stalnaker applied to Judge David Jacobs of the Connecticut Circuit Court for a warrant to search the defendant's home. The affidavit in support of the warrant alleged the seizure of the $20 bills, the significance of the serial numbers, and the affiants' belief that other money from the robbery and clothing worn by the robbers were in the defendant's home. The defendant contends that the affidavit did not establish the location of the items to be seized with the degree of certainty required to justify a nighttime search. It is not clear whether the defendant is asserting that the lack of certainty deprives the search of fourth amendment reasonableness or that the "positiveness" standard of Rule 41(c) of the Federal Rules of Criminal Procedure has not been met. Plainly the affidavit fails to satisfy

Rule 41(c) requirements for a nighttime search since the facts alleged are not "so definite and explicit that there could be little or no doubt that the property was on the premises." United States v. West, 328 F.2d 16, 18 (2d Cir. 1964). Whether Rule 41(c) must be complied with is another matter. The Second Circuit has specifically left open the question of whether the admissibility in a federal trial of evidence seized at nighttime pursuant to a warrant issued by a state judicial officer is governed by Rule 41(c) or by state law, Conn.Gen.Stat. § 54-33a, which imposes no extra requirement of certainty for a nighttime search. United States v. Ravich et al., 421 F.2d 1196, 1201, n. 5 (2d Cir. 1970), cert. denied 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). Additionally, there is a serious question whether the participation of Agent Stalnaker in the application for the warrant and in the search, and his previous contacts with Lieutenant Cei concerning the crime and the defendant as a possible suspect, rendered the search a federal search, see Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949), in which event Rule 41 would apply. Navarro v. United States, 400 F.2d 315 (5th Cir. 1968).

 It is unnecessary to resolve either of these questions here because the search did not meet the requirement of reasonableness of the fourth amendment. To support the affiants' belief that the items to be seized were located in the defendant's home, the affidavit informed the magistrate that the bank robbery had occurred at 11:45 a. m. on July 30 in Milford, a town near the defendant's home town of Meriden, and that he had been arrested at 1 a. m. on July 31, with money from the bank, in Wallingford, a town even closer to his home (although heading in a direction away from his home). The government relies on cases where facts of similar ambiguity have been held sufficient to validate daytime searches. United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970), and cases there cited. But the fact that a private dwelling is entered at night has constitutional significance. See United States ex rel. Boyance v. Myers, 398 F.2d 896, 897–898 (3d Cir. 1968); cf. Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514. While the precise requirement of Rule 41(c) regarding nighttime searches may well be a higher standard than fourth amendment reasonableness [1], it does not follow that, even without regard to Rule 41(c), whatever would be reasonable by day is reasonable at night. The fourth amendment protects individual privacy, Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and intrusion into an occupied home in the middle of the night is plainly a greater invasion of privacy than entry during the day. A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant. To justify such an added invasion of privacy there must be shown to the magistrate a somewhat higher degree of certainty that the property to be seized is in the home than would be required for a daytime search. Here the facts to establish location of the items are marginal at best. That the defendant may have stopped at his home after the robbery and left anything there is en-

---

1. This is certainly the implicit premise of decisions upholding nighttime searches that were exempted from the requirements of Rule 41(c) by the specific statutory authority of 18 U.S.C. § 1405, concerning searches for narcotics. United States v. Stallings et al., 413 F.2d 200, 206–207 (7th Cir. 1969), cert. denied 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Tucker, 262 F.Supp. 305, 308 (S.D.N.Y.1966); United States v. Castle, 213 F.Supp. 52, 54 (D.D.C.1962). The Supreme Court never passed on the validity of this statute, and none of the cases which relied upon it upheld as reasonable affidavits which were as marginal in establishing the location of the items to be seized as the affidavit here. Moreover, the provisions of § 1405 have been repealed and replaced by 21 U.S.C. § 879, which permit nighttime searches only when the judge or magistrate has "probable cause to believe that grounds exist" for service of the warrant at such time. P.L. 91-513 (1970).

tirely a matter of surmise. While this might suffice for a daytime search, it is not sufficient to make the nighttime intrusion of the defendant's home "reasonable," a determination that requires a balancing of "the need to search against the invasion which the search entails." Camara v. Municipal Court, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). The entry occurred at 4:15 a. m. The home was then occupied by the defendant's wife and their small children. Moreover, there were no special circumstances justifying a prompt execution of the warrant. The defendant was in custody, he had made no telephone calls subsequent to his arrest, and, while other unknown suspects were at large, the affidavit supplied no facts to indicate that search of the home would yield evidence of the identity or whereabouts of the defendant's confederates. Under all the circumstances the nighttime search of the defendant's home was not reasonable, and all the items seized there must be suppressed. See 26 A.L.R.3rd 951.

4. As he was leaving the defendant's home, Lieutenant Cei asked Mrs. Smith if he could have her permission to search her car which was parked across the street from the house. He told her that the search warrant for the home did not cover the car and that he would need her consent for the search. He also told her that should she not consent, that he could obtain a warrant to search it. She told him that it was all right with her and handed him the keys to the car. Search of her car disclosed various items of clothing including stockings suitable for use as face masks.

■■■ While the defendant challenges the voluntariness of his wife's consent to the search, his claim fails initially because he lacks standing to complain about this search. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The car was registered to Mrs. Smith and was purchased by her. The defendant had no ownership interest in the car, he was not in it at the time of the search and he is not being charged with unlawful possession of the items

seized. There are situations where a person's right to use premises gives him a sufficient possessory interest to have standing to object to a search, Jeffers v. United States, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951), but the right to use a car does not create an equivalent interest. A person does not have a reasonable expectation of privacy, Katz v. United States, *supra*, 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring) with regard to a car he has permission to use but is not using at the time of the search, whereas he does have such expectation with premises where his permission for use implies a right to leave his possessions for safe-keeping when he is not present.

■■■ Furthermore, the evidence adequately establishes that Mrs. Smith's consent to the search was freely given. Though understandably upset at having been awakened in the middle of the night, she maintained her composure, and was sufficiently at ease with the officers to offer them coffee. She testified that Lieutenant Cei threatened to impound the car if she did not consent to its search. Lieutenant Cei denied this, testifying that no mention of impounding occurred until after the search. At that time, he said that because of what he had found, he would have to impound the car, but when Mrs. Smith said she needed the car, he agreed to forego impounding for evidence purposes and instead photographed the car. Mrs. Smith also testified that prior to the search, Agent Stalnaker, as well, mentioned impounding the car and taking her children away. Agent Stalnaker denied making such statements, and Lieutenant Cei said he heard no such conversation. I resolve these conflicts in the evidence by crediting the testimony of Lieutenant Cei and Agent Stalnaker. Mrs. Smith's consent was voluntarily given. Consent of a spouse is sufficient to render a search lawful. United States v. Fernandez, 456 F.2d 638 (2d Cir. 1972). See also United States v. Mojica, 442 F.2d 920, 921 (2d Cir. 1971) (brother); United States ex rel. Combs v. LaVallee, 417 F.2d 523,

526 (2d Cir. 1969), cert. denied 397 U.S. 1002, 90 S.Ct. 1150, 25 L.Ed.2d 413 (1970) (mother). Moreover, wholly apart from family relationships, the joint user or joint tenant of property may validly consent to a search directed against another user. United States v. Cataldo, 433 F.2d 38, 40 (2d Cir. 1970), cert. denied 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971); Frazier v. Cupp, Warden, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Clearly a sole owner like Mrs. Smith may validly consent to the search of her own automobile.

 Finally, the lawfulness of the search of Mrs. Smith's car is not impaired by the invalidity of the prior search of her home. Nothing discovered by that search led to the officer's request to search her car nor to her decision to consent. There was thus no taint of the car search by reason of a primary illegality. *Cf.* Wong Sun et al. v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Accordingly, the motion to suppress is granted with respect to all items seized during the search of the defendant's home, and is denied with respect to all items seized from the defendant's person, from his car, and from his wife's car.