**UNITED STATES of America,**
**Plaintiff,**

v.

**Anthony SPITALIERI, Defendant.**

**No. CR75-92.**

United States District Court,
N. D. Ohio, E. D.

March 25, 1975.

---

11. *Ibid.,* Rules 4–A–2, 4–D–1, 4–L–2.

12. Agreement of September 27, 1967, Article I, Section 1(g); see Exhibit B to the Stipulation.

**168**

---

Frederick M. Coleman, U. S. Atty., David Margolis, Michael Michelson, Sp. Attys. Crim. Div., U. S. Dept. of Justice, Cleveland, Ohio, for the Government.

Thomas M. Shaughnessy, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This criminal proceeding results from a two count Indictment returned by the Grand Jury charging defendant, a convicted felon, with possession of a firearm in violation of 18 U.S.C. App. § 1202(a)(1), and obstruction of a criminal investigation by means of intimidation, force, and threat in violation of 18 U.S.C. § 1510.

Defendant moves the Court to suppress evidence obtained by the Cleveland Police Department during the search of defendant's automobile.

An evidentiary hearing was conducted by this Court on March 19, 1975.

The facts of this proceeding, as reflected by the uncontradicted testimony of Patrolman James Gnew of the Cleveland Police Department Impact Task Force, are that at approximately 10:10 p. m. on the evening of November 14, 1974, the police cruiser occupied by Gnew and his partner Patrolman Murray was abruptly cut-off from traffic in the vicinity of Euclid Avenue and East 82nd Street, Cleveland, Ohio.

Gnew and Murray stopped the vehicle on East 82nd Street. Defendant was unable to produce a driver's license or other documentary identification, but voluntarily offered his name, address and social security number.

Gnew directed defendant to wait in his vehicle and instituted a license check through the squad car mobile computer unit. Within fifteen or twenty minutes the officers were informed that the suspect vehicle was registered in the name of Diane Spitalieri, defendant's daughter, and that defendant had four capies and four traffic warrants outstanding against him.

Gnew contacted the Fifth District and requested a zone car for assistance to transport defendant to the Fifth District police station.

In compliance with established police procedure, Gnew impounded defendant's automobile and contacted an AAA tow truck to secure its transfer to G & M Auto Body located at 7224 Euclid Avenue, Cleveland, Ohio.

During the fifteen minutes that elapsed before the arrival of the requested zone car, the officers and defendant waited in their respective vehicles.

Subsequent to the zone car's arrival, defendant was removed from his vehicle, placed under arrest, issued a traffic citation charging an improper turn, escorted to the zone car, and thereafter removed to Fifth District headquarters.

Neither officer knew the defendant or had ever heard of him prior to the incident which occurred at approximately 10:10 p. m. on the evening of November 14, 1974.

Thereafter, in compliance with Cleveland City Ordinance 13.191602 and Police Department Directive dated February 8, 1973, (Gov't Exh. 3), Gnew proceeded to inventory the contents of the impounded vehicle. The inspection disclosed, among other things, a .38 Smith & Wesson handgun found under the left front seat.

Upon completion of the inventory, Gnew executed a standard Auto Tow Report (Gov't Exh. 6), at approximately 11:00 p. m. on the evening of November 14, 1974, which report was countersigned by an agent of G & M Auto Body, all in the routine course of Gnew's duties and in accordance with established impounding and tow procedures, as distinguished from police department vehicular processing procedure used in major criminal investigations which procedure directs a police department tow truck to transport the suspect vehicle to police headquarters where it is thoroughly searched and examined for fingerprints, blood stains, or other evidence by specialists. (Gov't Exh. 4).

Gnew confiscated the handgun which was thereafter processed at Fifth District headquarters. A Firearm Seizure Form (Gov't Exh. 5) was executed on November 15, 1974, pursuant to established police procedure. The weapon was subsequently forwarded to agents of the federal government.

Defendant asserts that the inventory conducted of the automobile was improper and in violation of the Fourth Amendment prohibition against unreasonable search and seizure. The Government counters that the weapon here in issue was obtained as a result of an established and recognized routine police procedure, namely, inventory of an impounded vehicle, thereby obviating the necessity of a warrant.

The narrow issue before the Court, therefore, is factual, i. e., was the search within the context of Fourth Amendment protection or a routine procedure employed for the purpose of obtaining an inventory of the suspect automobile to itemize, secure and protect defendant's property located therein and to further protect the police from subsequent unfounded claims of theft and/or embezzlement.

Of critical significance to the Court in resolving the foregoing issue is the routine employed by the officers in implementing an established inventory procedure to an impounded vehicle. Gnew properly impounded the suspect automobile subsequent to defendant's arrest, contacted an AAA tow truck, proceeded to inventory the entire automobile for valuables or other personal belongings, and upon completion executed a detailed Auto Tow Report (Govt. Ex. 6), all in compliance with established police practice and prescribed tow procedure regulations. The foregoing militates against, and renders untenable, defendant's assertion that the officers intended to and did conduct a search without warrant.

As recently stated by the Fifth Circuit Court of Appeals in the case of United States v. Gravitt, 484 F.2d 375 (5th Cir. 1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974):

> One of the officers drove the car to the police station. At the station, he and another officer conducted a thorough search of the vehicle. They testified that in taking custody of the car and in searching its contents, they followed standard police procedures designed to safeguard the property of arrested persons.

* * * * * *

This Court has consistently recognized that the fourth amendment is not violated when the police take custody of the property of persons they arrest to store that property for safekeeping. United States v. Rosenberg, 5 Cir. 1972, 458 F.2d 1183; United States v. Boyd, 5 Cir. 1971, 436 F.2d 1203; United States v. Lipscomb, 5 Cir. 1971, 435 F.2d 795. In those, and other cases that might be cited, we recognized that when the police take custody of any sort of container—be it an automobile, suitcase, or any other thing in which property may be stored—it is reasonable to search the container to itemize the property to be held by the police. *Boyd,* 436 F.2d at 1185; *Lipscomb,* 435 F.2d at 800–801. These decisions reflect, of course, the underlying principle that the fourth amendment proscribes only *unreasonable* searches. Lipscomb, 435 F.2d at 800, citing Terry v. Ohio, 1968, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L. Ed.2d 889, 899. In *Lipscomb* we articulated the considerations underlying the view that custodial seizures and accompanying inventory searches are reasonable:

> It cannot be denied that to prevent escape, self-injury, or harm to others, the police have a legitimate interest in separating the accused from the property found in his possession. An inventory is then necessary both to preserve the property of the accused while he is in jail and to forestall the possibility that the accused may later claim that some item has not been returned to him.

435 F.2d at 800.

Our view is in accord with decisions of other circuits. For example, United States v. Blackburn, 6 Cir. 1968, 389 F.2d 93; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385, 392–393, have joined *Lipscomb* in citing the need to protect the property of the accused as well as to protect the police from ungrounded claims. The American Law Institute's Model Code of Pre-Arraignment Procedure adopts a view substantially in accord with the decisions in this and the other circuits. ALI, Model Code of Pre-Arraignment Procedure § 230.6(3) (Off. Draft No. 1, July 1972). *Id.* 484 F.2d at 377, 378–79.

*See,* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Blackburn, 389 F.2d 93 (6th Cir. 1968). *See also,* United States v. Gerlach, 350 F.Supp. 180 (E.D.Mich.1972):

> An inventory search, properly conducted without intent of avoiding warrant requirements, is not an infringement on Fourth Amendment rights, nor should evidence obtained during the course of that search be suppressed.

> In this case the counterfeit bills were found in a box in the trunk and the wallet was beneath the front seat. Because the keys were left in the vehicle, it was in the interest of the defendant and police to inventory all property in places that were open or could be opened through the use of the keys. No locks were forced. The record does not indicate that there were any efforts to examine the vehicle in any way different than the normal inventory search prescribed by regulation or in places not accessible except by force. The record shows that the search and subsequent inventory was reasonable to protect the property and the police from false charges, embezzlement or theft. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, (1968) United States v. Mitchell, 458 F.2d 960 (9th Cir. 1972). *Id.* 350 F.Supp. at 183.

Upon consideration of the foregoing, the Court finds:

1. Patrolman Gnew, in conformity with established police regulations and procedure, properly conducted an inventory of defendant's automobile subsequent to its impound-

ment by the Cleveland Police Department.

2. The weapon seized as a result thereof is properly admissible in evidence at trial.

3. Defendant's Motion to Suppress is hereby denied.

It is so ordered.