338 So.2d 633 (1976)
STATE of Louisiana, Appellee,
v.
Michael Kent JEWELL, Appellant.
No. 57735.
Supreme Court of Louisiana.
October 6, 1976.
Dissenting Opinion October 19, 1976.
*635 Michael S. Wolf, McCollister, Belcher, McCleary & Fazio, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard E. Chaffin, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The crucial issue of this appeal concerns the alleged validity of a warrantless "inventory search" of the automobile of the defendant, who was under custodial arrest. The alleged purpose of the inventory search was to safeguard the property of the accused for which the law enforcement agency might be accountable, since its officers were taking possession of the vehicle and removing it from the scene as a consequence of its driver's arrest.
The defendant Jewell was convicted with possession of an illegal drug, phencyclidine (PCP), La.R.S. 40-968, and sentenced to supervised probation for three years. The sole issue raised by his appeal is that the PCP was unconstitutionally seized and that the trial court erred in denying the defendant's motion to suppress the state's use of this evidence.
Context Facts
The defendant Jewell was initially arrested for obstructing the highway:
While patrolling at 2:45 a.m., two police officers came upon the defendant's automobile parked so as to protrude across the center of a narrow two-lane street in a quiet residential neighborhood. (As a result, another vehicle was required to drive onto the narrow shoulder to pass the parked car.) The motor was running, the headlights were off, and the defendant was sleeping or passed out in the driver's seat, head slumped over.
The officers were able to arouse the defendant by shaking him, after knocking on the window had failed to do so. When the defendant alighted from the vehicle, he was given the Miranda warnings and informed that he was arrested and would be booked for obstructing the highway.
In a search of his person following this custodial arrest, an aluminum foil package was found in his shirt pocket, which contained a green substance suspected to be hashish, a form of marijuana. The defendant was informed that he was also under arrest for this offense. (The seizure of the hashish is not an issue upon this appeal.)
For purposes of the present appeal, we find no reason to reject the state's argument that the police officers followed normal and customary practice in making a custodial arrest for obstruction of the highway under the circumstances here presented, including the possible or probable intoxication of the obstructing vehicle's driver.[1] The custodial arrest based on probable cause thus authorized the warrantless search of the arrestee himself, because of the exigent necessity of assuring the absence of weapons on his person. See State v. Breaux, 329 So.2d 696 (La.1976).
Further, due to the intoxicated condition of the arrested driver, the determination of the arresting police officers was not unreasonable to arrange to take custody of the vehicle for purposes of removing it from the scene. We are not here faced with a situation where, because of a traffic offense, the arresting officers plan to "impound" a vehicle, despite the fact that there is no necessity to do so, in order to search it.[2] (The issue remains whether the vehicle *636 was at the time of the search legally "impounded" for purposes of a permissible inventory.)
In accord with their decision to take custody of the vehicle, one of the officers proceeded on the spot to make what he denoted as an "inventory search" of the vehicle (of which more later, see II below). In the course of this search, he discovered a small excedrin (like aspirin) bottle in the open ashtray.
The bottle contained about seven pills or capsules, none of which are shown to be illegal, and a piece of plastic. The latter contained a minute amount of a white powdered substance which, upon laboratory analysis, proved to be PCP. (The defendant's appeal is from his conviction of possession of the latter.)
We thus reach the issues posed to us by the present appeal: (I) Does a warrantless search of an automobile for "inventory" purposes violate our state constitution's prohibition against unreasonable searches and seizures by agents of governmental power?; and (II) if not, is the present search nevertheless unjustified as beyond the contemplated scope of an inventory search?

I.
Our state constitution prohibits "unreasonable searches, seizures, and invasions of privacy" by our governmental agents. Louisiana Constitution of 1974, Article 1, Section 5. By reason of American constitutional provisions similar to Louisiana's, a search warrant is required as a general rule, in order for a search to be constitutionally authorized.
To this general rule, however, historical and practical exceptions have developed justifying warrantless searches under limited, specified circumstancesessentially because of exigent necessity. These include, for instance, a limited search incident to a lawful arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a search of an automobile based upon particularized probable cause that it contains contraband or other contents that offend against the law, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), or the seizure of objects in plain view by one with a lawful right to be in a position to so observe them, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The cited decisions involve judicial interpretations of the federal constitution's Fourth Amendment prohibition against unreasonable searches and seizures. In numerous decisions, this court has similarly interpreted our state constitution's prohibition as not forbidding as unreasonable a warrantless search based upon valid exceptional reasons of the nature above stated.
We thus reach the issue reserved by us for future decision in State v. Jones, 315 So.2d 270 (La.1975); May warrantless police constitutionally enter an automobile they have taken in custody for reasonable cause, in order for them to inventory and remove its contents for the purpose of safeguarding them, pursuant to a search reasonably limited in scope solely to accomplish that purpose? If our state constitution forbids such warrantless inventory searches without the owner's consent, then evidence thus unconstitutionally seized is not admissible in evidence in a criminal prosecution. Louisiana Constitution of 1974, Article 1, Section 5.
The United States Supreme Court explicitly held that standard police procedure in making reasonable "inventory searches"[3] of *637 the nature above set forth, does not constitute unreasonable searches which offends the Fourth Amendment to the United States' Constitution; therefore, evidence obtained as a consequence of such search is admissible in evidence in criminal prosecutions. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
In so concluding, the court pointed out that its previous decisions had "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody."___ U.S. ___, 96 S.Ct. 3098. The decisions referred to were Cady v. Dombroski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
In Opperman and the three other cited decisions, in each case the vehicle search was made only after the car had been taken to the place of impoundment, the impounding of the car was examined and found to be for valid reason, the search was pursuant to standard procedures which had as sole purpose the safeguarding of the vehicle's contents, and the search was found to be reasonably limited in scope to accomplish this purpose under the particular circumstances reflected.
We do not, by so noting, intimate that under the federal constitution a search of a vehicle by arresting officers in the field at the scene of the arrest may never constitute a valid inventory search. On the other hand, the care with which our high court examined these factors, before holding permissible the inventory searches there at issue, indicates to us that, in the absence of clear showing of a true inventory search (see Footnote 3 above), the Fourth Amendment does not permit a warrantless search of an automobile without probable cause or without the consent of its custodian. Fundamental constitutional guarantees against unreasonable searches cannot be evaded by labelling them "inventory" searches.
Preliminarily to upholding the validity of the inventory search in South Dakota v. Opperman, the Supreme Court stated, 96 S.Ct. 3096:
"* * * The authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.
"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, United States v. Mitchell, 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, United States v. Kelehar, 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, Cooper v. California, 386 U.S., at 61-62, 87 S.Ct. 788. The practice has been viewed as essential to respond to incidents of theft or vandalism. See Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781, 782 (1971), cert. denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). * * *"
Seizures of contraband during standard inventory procedures have almost uniformly been upheld by the state courts. Applying the Fourth Amendment standard of "reasonableness," the state courts have overwhelmingly concluded that, even when characterized as a search, the intrusion is constitutionally permissible.[4] The majority *638 of the federal courts of appeal have likewise sustained true inventory procedures as reasonable police intrusions.[5]
In the light of these historically accepted and practicably justifiable reasons, the United States Supreme Court in Opperman held that a true inventory search of a lawfully and actually impounded vehicle did not violate the Fourth Amendment prohibition against unreasonable searches, if conducted within the scope of standard police procedures which had as their purpose the inventorying and safeguarding of the vehicle's contents.
We find this reasoning persuasive. We therefore, for similar reasons, hold that true inventory searches (see footnote 3) of motor vehicles impounded for reasonable cause do not offend the prohibition of Article 1, Section 5, of our state constitution against unreasonable governmental searches, seizures, or invasions of privacy.
However, in so holding, we adopt the general view of other courts which have reached the same conclusion, that, see Annotation, Inventory Search of Impounded Vehicles, 48 A.L.R.3d 537, 544 (1973):
"An essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search. It has therefore been held that where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search was unlawful."
"Another essential prerequisite to a valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance. It has therefore been held that where the circumstances show that the police had no authority to impound the vehicle, or that police custodial care of the vehicle was not necessary, the inventory search was unlawful."
"* * * [L]awful custody of an impounded vehicle does not of itself dispense with the constitutional requirement of reasonableness in regard to searches thereafter made of such vehicle."

II.
In the present instance, the state attempts to justify the present as a valid inventory search of the nature that we have just held, see I above, is not prohibited by our state constitution.
Sometime after the defendant was arrested, the officers requested that the wrecker service pick up his automobile for storage. The record does not reflect whether the alleged inventory search occurred before or after this request.
Allegedly in accordance with departmental policy, one of the officers after the arrest proceeded to make what he termed an "inventory search" of the vehicle. He looked in the glove compartment, under the front seat, in the back seat, and in the *639 trunk. He also stated that in such inventory searches he sometimes searched under the hood of the car, Tr. 28, although he did not do so in this instance.
In the open ashtray near the driver's seat, he saw the small pill (excedrin) bottle and several tablets in it. He took them out and found the plastic containing the white powdery substance which turned out to be PCP, as he suspected.
As in State v. Jones, 315 So.2d 270 (La. 1975), the facts of the present case do not support the conclusion that the officers were conducting an inventory search to safeguard the vehicle's contents, as contrasted with making a warrantless search for incriminating evidence, without probable cause to do so.
While the car was indeed in police custody at the time, the on-the-spot search by the arresting officers does not resemble the formal inventory for storage purposes, after a vehicle has been actually impounded, of the federal vehicle-inventory decisions above cited.
No evidence in the record shows, for instance, that standard inventory forms were completed and kept for future reference (showing presence or absence of valuables), nor that a place of safekeeping for valuables so secured was maintained. The present search seems solely to have been for the purpose of obtaining incriminating contents, and all objects seized by the search were turned over to the laboratory for analysis and placed in evidence envelopes.
Unlike in the cited federal decisions, the car was not formally impounded within the custody of an official storage agency at the time. The record does not even clearly reflect that the tow truck had been called before the search began. We are not prepared to say that a permissible inventory search may never take place in the field at the time of the arrest; however, an indicia of a true inventory search is that it is made at the place of custody for safekeeping of the vehicle, by inventorying and storing those contents which might be pilfered or damaged after the vehicle is stored in official custody.
Furthermore, as was the case in the cited federal decisions, the present vehicle's custodian was present at the time of the so-called inventory search. If indeed the purpose of the search was to safeguard the custodian's valuables instead of to search for evidence without probable cause to do so, it would seem more reasonable for the police officers to have made inquiry of the vehicle's driver concerning the matter, instead of forcing him to stand silent to one side, head and arms across the hood (nose bleeding from being forced abruptly against the hood) or else, later, with hands handcuffed or stretched out across the top of the vehicle, while one of them proceeded with painstaking care to look for whatever he was looking for.
We are not prepared to say that a true inventory search may never be made in the presence of the vehicle's custodian and without his consent. However, if the purpose of the search is truly only to inventory the contents of the vehicle and to safeguard them during official storage, an indicia that such is the real purpose of the search is to consult with the owner or custodian of the vehicle when he is present at the time of the search. The cited federal decisions concerned inventory searches where the owner of the vehicle was absent or unknown, or where it was not practicable to consult with him at the time of the routine storage inventory.
Additionally, the contraband was inside of an excedrin bottle, an unlikely place for anything of value which an owner could complain was lost or stolen. The opening of the bottle and inspecting its contents is inconsistent with the purpose and permissible scope of a true inventory search. The excedrin bottle was itself found inside an ashtray on the dash of the car, also an unlikely place for an owner to keep anything of value.[6]
*640 In summary, the facts surrounding the search which produced the PCP support a conclusion that the police officers were searching for incriminating evidence, and that they were not collecting personal items found in the car which might be stolen and thus needed to be inventoried either for the police department's protection or to safeguard the defendant's property.
We therefore hold that the search which produced the PCP admitted into evidence was not part of any inventory procedure authorized by our state constitution as reasonable under the circumstances.
The claim is made that the search was conducted pursuant to a departmental regulation. If so, a police inventory procedure of this naturewhich permits arresting police officers unlimited discretion and without probable cause to make on-the-spot searches of vehicles at the scene of an arrestcannot (however standard it may be with a local department) supersede the provisions of our state constitution restricting all agents of government from making unreasonable searches and seizures. Unconstitutional searches cannot be constitutionalized by standardizing them as a part of normal police practice.
Having concluded that the present was not such an inventory search as is authorized by our constitution, we need not consider alternative arguments of the defendant. They are that, even if the present were a lawful such search, its scope (at least, insofar as the removal of the contents of the ashtray and insofar as the inspection of the bottle's contents) exceeded the purpose for which authorized; and that noting a small pill bottle in plain view in an ashtray, does not necessarily confer upon a governmental agent the right to seize it and open it, in absence of any indication that it contains contraband or evidence relevant to the search, see State v. Meichel, 290 So.2d 878 (La.1974).

III.
The state contends, alternatively, that the search of the ashtray of the automobile following the defendant's arrest was a search incident to an arrest, such as is constitutionally authorized even although without a warrant.
The search was made by one officer, while the defendant was standing outside under guard of the other officer. At the time, the defendant's hands were either handcuffed or else placed (at the direction of the arresting police) on top of the vehicle.
A search conducted incident to a lawful arrest is a well accepted exception to the warrant requirement. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). A search of the accused person and the area within his immediate control incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
As these cases hold, the warrant exception granting police officers the right to search a defendant and the area in his immediate control pursuant to a lawful arrest, is designed to allow the officers to remove any weapons that the defendant might use to resist arrest or effect his escape and to prevent the concealment and destruction of evidence. Those purposes control the permissible scope of the search, and the reasonableness of the search as measured by this permissible scope depends upon the facts of each case.
In the instant case, the vehicle search yielding the PCP was not even claimed by the searching officer to be confined to an examination for weapons that might be used to resist the arrest, or for evidence within the suspect's immediate control that might be destroyed. The accused *641 was in fact, under guard, well outside the vehicle, arrested for charges not connected with any shown probable cause to search his vehicle.
Under the circumstances shown, therefore, the state's alternative argument is without merit. The present is not within the permissible scope of a search incident to a lawful arrest. It thus violates our state constitution's prohibition against unreasonable searches and seizures.
Conclusion
The PCP seized from the ashtray of the defendant's vehicle was, for the reasons stated, the product of an illegal search. It violated Louisiana Constitution of 1974, Article 1, Section 5, which prohibits unreasonable governmental searches and seizures in violation of individual rights. Consequently, the trial court committed error in denying the defendant's motion to suppress such evidence and in admitting it into evidence.
Accordingly, the defendant's conviction and sentence are set aside, and the case is remanded for a new trial in accordance with law.
REVERSED AND REMANDED FOR A NEW TRIAL.
SANDERS, C.J., dissents and will assign written reasons.
SUMMERS, J., dissents.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I respectfully dissent from the majority opinion for the following reasons.
On April 20, 1975, two Baton Rouge policemen stopped to investigate a car parked with motor running and partially obstructing a public street. They discovered defendant, Michael Kent Jewell, slumped over in the driver's seat, apparently either sleeping or in some sort of stupor. The officers tried to rouse Jewell by knocking on the windows of the vehicle. When this failed, they entered the car and shook defendant until he regained consciousness. Upon alighting, Jewell was given his Miranda warnings, informed that he was under arrest for obstructing a public highway, and a search of his person was conducted as permitted by Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) and United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). During the course of the search, an aluminum foil packet containing hashish was recovered from defendant's shirt pocket. The discovery of the controlled dangerous substance together with defendant's obvious state of intoxication (Jewell told the officers that he had consumed an excessive amount of alcohol), established probable cause to search his automobile for other illegal drugs or intoxicants.
While I am in complete agreement with the majority's adoption of the reasoning in South Dakota v. Opperman,___ U.S.___, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and determination that inventory searches do not violate our own constitution, I find it unnecessary to explore the question of whether the scope of the search in the instant case comported with the permissible limits of an inventory search, in view of my conclusion that probable cause existed for the search of defendant's vehicle.
Warrantless searches of automobiles initially stopped on public highways have been upheld based on probable cause to search because of their inherent mobility and the diminished expectation of privacy. This is true whether the search is conducted on the road or later at the station house. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carrol v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In our own decisions, we have frequently indicated that a warrantless search of an automobile is justified when there is a combination of both probable cause and exigent circumstances. State v. Jones, 315 So.2d 270 (La.1975); State v. Navarro, 312 So.2d 848 (La.1975); State v. Hargiss, 288 So.2d 633 (La.1974); State v. Tant, 287 So.2d 458 (La.1973). Conceived correctly, however, the exigent circumstance is the inherent mobility of the car.
*642 In Chambers, the United States Supreme Court held that once an automobile is stopped based on probable cause, a warrantless search may be conducted despite the fact that it might be practical to wait until a warrant is obtained and even though there is no danger that the vehicle will escape the jurisdiction. This holding was approved in Opperman.
In the instant case, the officers were justified in searching defendant's automobile for illegal drugs or intoxicants which might have explained the unconscious condition in which he was found parked with the motor running. They acted properly in inspecting the contents of a small pill (excedrin) bottle situated in an open ashtray near the driver's seat in the dashboard of defendant's vehiclean unusual location for medication. When a piece of plastic containing a small amount of a white powdered substance was discovered in the bottle which, in the officers' experience, resembled PCP (phencyclidine), the seizure of the suspected contraband was legally permissible. Accordingly, since the evidence was seized pursuant to a reasonable automobile search based on probable cause, the trial judge was correct in overruling defendant's motion to suppress the evidence.
SANDERS, Chief Justice (dissenting).
At about 12:45 a.m., on April 20, 1975, city police officers Eugene Vincent and Al Saizan observed an automobile, with its lights out but with its motor running, parked, at least partially, in Beech wood Drive in Baton Rouge. The defendant was asleep inside the parked vehicle. The officers tried to awaken him by rapping on the car windows but were unsuccessful. One of the officers then opened the front door on the passenger side, and the other officer opened the driver's door. Together, the officers roused the defendant, and he stepped out of the automobile.
The officers testified that they immediately placed defendant under custodial arrest for obstructing the street, the usual practice for this offense. At that time, they advised him of his "Miranda" rights, which he stated he understood. Contrary to the police, Jewell stated that he was arrested later, though he conceded that he was not positive. The defendant admitted that he was groggy from the effects of alcohol. I accept the officers' testimony as to the time of arrest.
After the arrest, though the record is silent as to the exact time, the officers requested that the wrecker service pick up the automobile for storage.[1]
Officer Saizan searched the defendant and found a small, aluminum foil-wrapped packet in his shirt pocket. The officers opened the packet and observed what appeared to be hashish. Immediately, they advised him that he would also be booked for possession of the hashish, a controlled dangerous substance.
In accordance with departmental policy, Officer Vincent then began an inventory search of the automobile.[2] In the open, dashboard ashtray, the officer observed an Excedrin bottle, containing several tablets, several capsules, and a white powder. During the inventory, he also observed a pipe, *643 containing a vegetable residue. He took possession of these items and asked Jewell what they were. Jewell replied that he did not know. The officer then continued his inspection of the automobile. At that time, "official storage" arrived to store the vehicle.
Upon laboratory testing, the white powder in the Excedrin bottle proved to be phencycline, the vegetable material in the packet, hashish, and the pipe residue, marijuana. Defendant sought to suppress these narcotics.[3]
The Fourth Amendment of the United States Constitution, as well as Article I, Section 5 of the Louisiana Constitution (1974), prohibits unreasonable searches and seizures. As a general rule, a search warrant is required. Among the well-established exceptions is a search incident to a lawful arrest. See Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).
I have little difficulty in concluding that the search of defendant's person and seizure of the hashish was constitutional. This search was incidental to and immediately followed defendant's custodial arrest. The circumstance that the arrest was for a traffic offense, obstructing the public street, does not alter the result. In two recent decisions, the United States Supreme Court upheld a "full search of a person" incident to a custodial arrest for a traffic violation. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).
In sustaining the search in Gustafson v. Florida, supra, the United States Supreme Court held:
"[U]pon arresting petitioner for the offense of driving his automobile without a valid operator's license, and taking him into custody, Smith was entitled to make a full search of petitioner's person incident to that lawful arrest. Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Smith did not indicate any subjective fear of the petitioner or that he did not himself suspect that the petitioner was armed. Having in the course of his lawful search come upon the box of cigarettes, Smith was entitled to inspect it; and when his inspection revealed the homemade cigarettes which he believed to contain an unlawful substance, he was entitled to seize them as `fruits, instrumentalities, or contraband' probative of criminal conduct."
The automobile search, however, is the controversial issue in this Court.
Recently, in South Dakota v. Opperman, ___ U.S. ___, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court dealt with evidence seized during a routine inventory search of an automobile lawfully impounded by police for violation of a parking ordinance. A police officer, having issued a second ticket for an overtime parking violation, routinely reported to police headquarters, and after the vehicle was inspected, the car was towed to the city impound lot. From outside the car at the impound lot, a police officer observed a watch on the dashboard and other items of personal property located on the back seat and back floorboard. At the officer's direction, the car door was then unlocked and, pursuant to standard police procedures, the officer inventoried the contents of the car, including the contents of the unlocked glove compartment. There he found marijuana contained in a plastic bag. The contraband, as well as the other items of personal property, were taken for safekeeping. After he came to claim his property, the owner of the car was arrested for possession of marijuana.
In ruling that the evidence seized was admissible, the United States Supreme Court stated:
"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying *644 the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, United States v. Mitchell, 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, United States v. Kelehar, 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, Cooper v. California, 386 U.S. 58, at 61-62, 87 S.Ct. 788, 17 L.Ed.2d 730. The practice has been viewed as essential to respond to incidents of theft or vandalism. See Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781, 782 (1971), cert. denied, 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972); Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.
* * * * * *
"On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not `unreasonable' under the Fourth Amendment."
Seizures of contraband during inventory procedures have almost uniformly been upheld by the state courts. Applying the Fourth Amendment standard of "reasonableness," the state courts have overwhelmingly concluded that, even when characterized as a search, the intrusion is constitutionally permissible.[4] The majority of the federal Courts of Appeal have likewise sustained inventory procedures as reasonable police intrusions.[5]
The officers in the instant case had placed the defendant under arrest both for obstructing the street and possession of hashish, a controlled dangerous substance. Under standard practice, the officers arranged for the pickup and storage of the automobile. In conducting the standard inventory search of the vehicle, an officer found the Excedrin bottle and pipe.
I conclude, therefore, that the search of the automobile was a valid inventory search.
The majority finds that the inventory search was merely a pretense and that in truth the search was one for incriminating evidence. This finding represents a rejection of the uncontradicted testimony of two police officers. I strongly disagree with the finding.
Assuming, however, that the search of the automobile was in fact one for incriminating evidence, as the majority finds, the search was nonetheless valid since there *645 was probable cause and exigent circumstances. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419 (1970); State v. Jones, La., 315 So.2d 270 (1975); State v. Navarro, La., 312 So.2d 848 (1975).
After the officers legally secured the hashish from defendant's person, there can be no doubt that there was probable cause to search the automobile for other narcotics and narcotic paraphernalia.
The circumstances justifying a warrantless search include the mobility of the automobile and the fact that it was about to be removed by storage personnel over whom the officers did not exercise immediate control.
As demonstrated by Mr. Justice Marcus in his forceful dissent, an automobile search under these circumstances is reasonable and hence constitutional.
For the reasons assigned, I respectfully dissent.
NOTES
[1] The driver explained that he had parked on the deserted residential side-street because he was drowsy and felt it unsafe to drive because he was intoxicated as the result of attending a beer party earlier in the evening. As he explained, he had been weaving on a more traveled thoroughfare and therefore pulled off to sleep and sober up.
[2] Under the circumstances, it was not practicable, for instance, to permit the arrested person to drive the vehicle to the police station for his booking, or to leave the automobile parked and locked, if the vehicle's driver so wished.
[3] As contrasted with a search of a motor vehicle based upon probable cause that its contents offend the law, an inventory search is conducted not to secure evidence but merely to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicle's being taken into lawful custody (impounding) by the police for the purpose of storage or safekeeping until the owner is located or until, if he is arrested, he is released. The search should be by virtue of a standard procedure and reasonably limited in scope to accomplish only this sole purpose for which authorized. Annotation, Inventory Search of Impounded Vehicle, 48 A.L.R.3d 537 (1973) and decisions cited in the text of the opinion.
[4] South Dakota v. Opperman, cited above, and the cases therein cited at 96 S.Ct. 3097: City of St. Paul v. Myles, 298 Minn. 298, 218 N.W.2d 697, 699 (1974); State v. Tully, 166 Conn. 126, 348 A.2d 603, 609 (1974); People v. Trusty, 183 Colo. 291, 516 P.2d 423, 425-426 (1973); People v. Sullivan, 29 N.Y.2d 69, 73, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971); Cabbler v. Superintendent, 528 F.2d 1142 (CA4 1975), petition for cert, pending; Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971); State v. Wallen, 185 Neb. 44, 173 N.W.2d 372, cert, denied, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968); People v. Clark, 32 Ill.App.3d 898, 336 N.E.2d 892 (1975); State v. Achter, 512 S.W.2d 894 (Mo.App. 1974); Bennett v. State, 507 P.2d 1252 (Okl.Cr. App.1973); People v. Willis, 46 Mich.App. 436, 208 N.W.2d 204 (1973); State v. All, 17 N.C. App. 284, 193 S.E.2d 770, cert, denied, 414 U.S. 866, 94 S.Ct. 51, 38 L.Ed.2d 85 (1973); Godbee v. State, 224 So.2d 441 (Fla.App.1969).
[5] South Dakota v. Opperman, cited above and the cases therein cited at 96 S.Ct. 3098; Cabbler v. Superintendent, supra; Barker v. Johnson, 484 F.2d 941 (CA6 1973); United States v. Mitchell, 458 F.2d 960 (CA9 1972); United States v. Lipscomb, 435 F.2d 795 (CA5 1970), cert, denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); United States v. Pennington, 441 F.2d 249 (CA5 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); United States v. Boyd, 436 F.2d 1203 (CA5 1971); Cotton v. United States, 371 F.2d 385 (CA9 1967). Accord, Lowe v. Hopper, 400 F.Supp. 970, 976-977 (S.D.Ga.1975); United States v. Spitalieri, 391 F.Supp. 167, 169-170 (N.D.Ohio 1975); United States v. Smith, 340 F.Supp. 1023 (Conn.1972); Gravitt v. United States, 484 F.2d 375 (CA5 1973), cert. denied 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974).
[6] The searching officer inferentially admitted this, when he testified that the ashtray was open (rather than closed, as the defendant testified, who was driving his sister's car): "Yes, sir, I'm positive it was open because on an inventory search, I have no business going into an ashtray." Tr. 24.
[1] Apparently, this conformed to the established practice of protecting the automobile. Officer Vincent testified: "Any time that we make an arrest out of a vehicle, we have to store it. The vehicle is our responsibility." [Trial Tr. 22].
[2] Officer Vincent testified: "It's a departmental policy that we do make an inventory search of the vehicle." (Referring to a vehicle that is to be stored.) [Trial Tr. 22].

Sergeant Saizan described the inventory search as follows:
"Q. How thoroughly do you customarily search automobiles that are impounded for traffic offenses?
"A. We list all items that are of value; check under the front seat; check the trunk; and whatever's in view and list `em.
"Q. What are you basically looking for? Items of value that the department could be held accountable for?
"A. Basically.
"Q. I see. And then do you usually search the ashtrays?
"A. If the ashtray is open and I see something in it, I'm going to find out what it is." [Trial Tr. 27-28].
[3] By stipulation, the testimony taken at the preliminary hearing, on the motion to suppress and at the trial is to be considered in determining the admissibility of the contraband. [Record 13].
[4] South Dakota v. Opperman, supra, and the cases therein cited: City of St. Paul v. Myles, 298 Minn. 298, 218 N.W.2d 697, 699 (1974); State v. Tully, 166 Conn. 126, 348 A.2d 603, 609 (1974); People v. Trusty, 183 Colo. 291, 516 P.2d 423, 425-426 (1973); People v. Sullivan, 29 N.Y.2d 69, 73, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971); Cabbler v. Superintendent, 528 F.2d 1142 (C.A.4 1975), petition for cert. pending; Warrix v. State, 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971); State v. Wallen, 185 Neb. 44, 173 N.W.2d 372, cert. denied, 399 U.S. 912, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970): State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968); People v. Clark, 32 111. App.3d 898, 336 N.E.2d 892 (1975); State v. Achter, 512 S.W.2d 894 (Mo.App.1974); Bennett v. State, 507 P.2d 1252 (Okl.Cr.App.1973); People v. Willis, 46 Mich.App. 436, 208 N.W.2d 204 (1973); State v. All, 17 N.C.App. 284, 193 S.E.2d 770, cert. denied, 414 U.S. 866, 94 S.Ct. 51, 38 L.Ed.2d 85 (1973); Godbee v. State, 224 So.2d 441 (Fla.App.1969).
[5] South Dakota v. Opperman, supra, and the cases therein cited: Cabbler v. Superintendent, supra; Barker v. Johnson, 484 F.2d 941 (C.A.6 1973); United States v. Mitchell, 458 F.2d 960 (C.A.9 1972); United States v. Lipscomb, 435 F.2d 795 (C.A.5 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); United States v. Pennington, 441 F.2d 249 (C.A.5 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); United States v. Boyd, 436 F.2d 1203 (C.A.5 1971); Cotton v. United States, 371 F.2d 385 (C.A.9 1967). Accord, Lowe v. Hopper, 400 F.Supp. 970, 976-977 (S.D.Ga.1975); United States v. Spitalieri, 391 F.Supp. 167, 169-170 (N.D.Ohio 1975); United States v. Smith, 340 F.Supp. 1023 (Conn.1972); Gravitt v. United States, 484 F.2d 375 (C.A.5 1973), cert. denied 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974).