354 So.2d 504 (1978)
STATE of Louisiana, Respondent,
v.
David ROME, Defendant-Relator.
No. 60129.
Supreme Court of Louisiana.
January 30, 1978.
*505 Ronald P. Herman, Metairie, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Asst. Dist. Atty., for respondent.
TATE, Justice.
The defendant is charged with possession of phencyclidine, La.R.S. 40:967, a felony. He moved to suppress the drug, claiming that it was the product of an illegal search of his vehicle following a stop for an alleged traffic violation.
We granted his writ application, 349 So.2d 875, to review the trial court's denial of his motion. The issue before us is whether the drugs were found as a result of a valid "inventory search."
The defendant was stopped shortly after midnight on a rainy evening. The state trooper had observed him driving slightly in excess of the speed limit, with his rear tires spinning and his vehicle fishtailing as he had accelerated on the wet pavement.
The trooper stopped the vehicle and caused it to pull over in a service station area. He asked the defendant, the driver, to step to the rear of the vehicle. Noticing that the defendant had stumbled and that there was "a hint of alcohol" on his breath, Tr. 16, he gave him a "field sobriety test" asked him to touch the tip of his nose with his eyes closed, walk in a straight line. Feeling that the results indicated intoxication, the trooper then arrested the defendant for driving while intoxicated[1] and for failing to maintain reasonable control of his vehicle.
The trooper then proceeded to make an inventory search of the vehicle. The italicized portion of the following statement of facts are indicia that the search did not meet the constitutional test for validity thereof, to be summarized below.
Without asking the defendant whether he could make other arrangements for his vehicle (such as with the service station personnel, or by calling a member of his family), *506 the trooper determined to take the vehicle into custody. Accordingly, he called a private wrecker service and proceeded to make what he called a routine or mandatorily required inventory search.
The trooper did not request permission of the defendant before doing so. In the console area of the front seat, the trooper found two aluminum packets. The trooper thereupon opened them, found they contained a white powdery substance, and sent them on for laboratory analysis. (Such subsequent laboratory analysis is the basis of the present charge.)
In State v. Jewell, 338 So.2d 633 (La.1976), we noted that the warrantless search of a vehicle or its contents, without probable cause to suspect its contents and exigent circumstances, offends constitutional guarantees against unreasonable searches and seizures. However, we noted there that true inventory searches may not offend the constitutional prohibition, if restricted to the practical purposes which necessitate them. We cautioned, however, that law enforcement officials may not use this procedure as a subterfuge for a warrantless search without probable cause, for the primary purpose of seizing evidence for criminal proceedings. See also State v. Jones, 315 So.2d 270 (La.1975).
In Jewell, we distinguished inventory from other searches as follows, 338 So.2d 636:
"As contrasted with a search of a vehicle based upon probable cause that its contents offend the law, an inventory search is conducted not to secure evidence but merely to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicle's being taken into lawful custody (impounding) by the police for the purpose of storage or safekeeping until the owner is located or until, if he is arrested, he is released. The search should be by virtue of a standard procedure and reasonably limited in scope to accomplish only the sole purpose for which authorized."
In that case, we struck down as constitutionally invalid what was claimed to be an inventory search. Pertinent to the present facts, we observed that no attempt was made to obtain the consent of the motorist (or an alternative to impounding from him), and we further noted that no inventory-search value was served by inspecting inside an innocuous closed container (here, the aluminum packets) to discover their contents and whether their possession offended the criminal statutes. Such circumstances, we noted, were indicia that the search was not reasonably restricted in scope so as to constitute a true inventory search.
For similar reasons, we find the present "inventory" search to be unreasonable and in violation of constitutional guarantees against unreasonable searches and invasions of privacy. Upon arrest for a traffic violation, the motorist's vehicle cannot constitutionally, solely because of the traffic arrest, become the subject of an unlimited criminal investigation in order, if possible, to charge the motorist with more serious crimes.
The police officer in the present case claimed that he was mandatorily required by department regulation to take the vehicle into custody and to make the inventory search. If so, under the circumstances shown, the search was nevertheless invalid. "Unconstitutional searches cannot be constitutionalized by standardizing them as part of normal police practice." Jewell, 338 So.2d 640.
Accordingly, we grant the defendant's motion to suppress the evidence unconstitutionally seized from his vehicle, after he was stopped and arrested for a traffic offense; we reverse the trial court ruling to the contrary. The case is remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents for the reasons assigned by the Chief Justice.
MARCUS, J., concurs.
*507 SANDERS, Chief Justice (dissenting).
One rainy night at 12:30 a. m., State Trooper Bertaut observed the defendant, David Rome, driving approximately 55-60 m.p.h. in a 45 m.p.h. zone, spinning his rear tires, and fishtailing. The trooper stopped the defendant and ordered him to step to the rear of the car. As the defendant complied, he stumbled and leaned on the car. When asked to produce his driver's license, he fumbled for it. From the smell of alcohol on his breath and his poor physical coordination, the trooper determined that the defendant had been drinking. To ascertain the extent of his intoxication, he conducted a field sobriety test. Defendant failed the test. Trooper Bertaut then arrested him and issued a citation for driving while intoxicated and failing to maintain proper control of his vehicle. The trooper then searched and handcuffed the defendant and placed him in the rear of the police car. During the arrest, Trooper Seaverson happened on the scene.
The troopers summoned a wrecker service. Pursuant to mandatory State Police orders, they inventoried the contents of the car's interior, glove compartment, console, and trunk. (They did not present the defendant with a consent to search form to sign.) Trooper Bertaut discovered two aluminum packets containing off-white powder in the console between the two front seats. As the troopers inventoried the contents of the vehicle, or shortly thereafter, the wrecker arrived.
At the station house, forty-five minutes after he was stopped, the defendant registered.05g% of blood-alcohol concentration on a photo-electric intoximeter test.
The issue here is whether the dangerous substance, phencyclidine, seized during the inventory must be suppressed.
Standard police procedures in making inventory searches of automobiles impounded or in lawful police custody do not offend federal and state constitutional provisions against unreasonable searches and seizures. South Dakota, v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Jewell, La., 338 So.2d 633 (1976). However, law enforcement officials may not use this procedure as a subterfuge for a warrantless search aimed at seizing evidence for criminal proceedings. State v. Jones, La., 315 So.2d 270 (1975). They must inventory and secure the contents of the car to safeguard the defendant's property, to protect the police department from claims that property from the car was stolen, and to protect the police from potential danger. South Dakota v. Opperman, supra.
Factors indicative of a true inventory procedure are: that the officers conduct the inventory after the car is in lawful police custody; that they summon the tow truck prior to the inventory; that they act pursuant to standard practices of the local police department; that they act in good faith, and not use the inventory as a subterfuge for a warrantless search; that they discuss the disposition of the car and its contents with the owner in order that he might give his permission to search; that the officers use standard inventory forms listing the car's contents and keep it for future reference; that they maintain a place of safekeeping for valuables inventoried; that the evidence seized was in a place in the car likely to hold something of value; and that the scope of the search is consistent with the objectives of collecting and safeguarding the defendant's property. South Dakota v. Opperman, supra; State v. Jewell, supra; Annot., 48 A.L.R.3d 537 (1973).
From the circumstances of the present case, I conclude that the evidence was seized pursuant to a valid inventory procedure.
As this Court recognized in State v. Jewell, supra, the trooper properly took custody of the car because the defendant appeared intoxicated.[1] There were no other *508 passengers to drive the car. Thus, the troopers had legal custody of the vehicle prior to the inventory. The record contains no allegation or evidence that the troopers were in bad faith. Their testimony is uncontradicted that they acted according to mandatory procedures. The troopers called the tow truck before they inventoried the car. It is inconsequential that the officers failed to present the defendant with a written consent form to search the car, since he appeared to be intoxicated. Finally, the extent of the inventory was consistent with the objectives of their inventory; they searched only areas likely to hold valuables. In this limited search, they discovered the evidence located in the console storage area between the bucket seats.
The majority, in my opinion, has erroneously imputed bad faith to the police officers.
For the reasons assigned, I respectfully dissent.
NOTES
[1] In actual fact, the subsequent formal PEI test indicated an alcoholic level of .056, well below the .10 which gives rise to a presumption of intoxication. La.R.S. 32:662 (1970). The statute provides that a level of .05 or less gives rise to a presumption "that the person was not under the influence of alcoholic beverages."
[1] The level of his blood-alcohol content registered only .05g% on PEI test taken forty-five minutes later at the police station. However, the trooper's immediate determination that he was intoxicated was reasonable since he failed the field sobriety test, had alcohol on his breath, and had poor physical coordination. Furthermore, as the trial judge noted, the defendant could have also been under the influence of drugs at the time of the arrest for the PEI test only indicates the presence of alcohol.