CIACCIO, J.
 
 *
 

 I,We granted certiorari in this case to consider whether the search of an unmarked pill bottle during an inventory search of an automobile exceeded the scope of a valid inventory search rendering the recovered evidence inadmissible against the defendant. For the reasons discussed herein, we conclude that the inventory search in question was a valid, good faith inventory search, and the officers were reasonable in opening the pill bottle to determine its contents in accord with the department’s standard procedures and the rationale and jurisprudence behind inventory searches. Therefore, we find the evidence from the unmarked pill bottle was lawfully recovered and can be used in the prosecution against the defendant. For the reasons more fully set forth below, we reverse the trial court’s grant of the defendant’s Motion to Suppress.
 

 FACTS AND PROCEDURAL HISTORY
 

 On the evening of December 26, 2008, at approximately 11:30 p.m. Officers Kenneth Stevens and Shane Maricelli of the Coving-ton Police Department were patrolling U.S. Highway 190 traveling east. A small red sedan passed them traveling | ¿west at approximately 62 miles per hour in a 45 mile per hour zone. The officers initiated a traffic stop of the vehicle. Porfirio Esco-to, the defendant, was the driver of the vehicle and its sole occupant. After some discussion, the defendant was unable to provide a valid United States driver’s license or proof of his legal status in the U.S.
 
 [1]
 
 The officers arrested the defendant for operating a motor vehicle in the United States without lawful presence pursuant to La. R.S. 14:100.13.
 
 [2]
 

 After placing the defendant under arrest and advising him of his Miranda rights, the
 
 *1162
 
 officers asked the defendant if he had a cell phone or a way to call someone to pick up his vehicle. The defendant indicated he had no cell phone and no number to contact anyone to retrieve or move his vehicle. The vehicle was parked near the shoulder of Highway 190 near the start of a turning lane into Covington High. After determining the vehicle could not safely remain in its location, the officers called the dispatcher for a tow truck. Thereafter, the officers conducted an inventory search of the vehicle. During the search, Officer Maricelli came across an |3opaque, nonprescription, blue pill bottle sitting in the center console cup holder. Officer Mari-celli then opened the pill bottle to determine its contents. The bottle contained a variety of different pills, and the officers phoned Walgreens Pharmacy in order to identify the pills. Walgreens indicated some of the pills found in the bottle required a prescription, and upon questioning, the defendant indicated he did not have a prescription and had purchased the pills from a co-worker because he hurt his hand. During the inventory search, the officers also found DVDs, clothes, shoes, and an X-Box game console in the vehicle.
 

 Subsequently, both the tow truck and Anissa Bennet, a woman identifying herself as the defendant’s girlfriend, arrived on the scene. Ms. Bennet was out looking for the defendant, because he was late coming home from work. After Ms. Ben-net made arrangements with the tow truck driver to not tow the vehicle, the defendant’s vehicle was released to Ms. Bennet, and she parked it in the Covington High School parking lot until she could return with someone to bring the vehicle home. Because the vehicle was never towed and was released to Ms. Bennet, the inventory form was never executed.
 

 Mr. Escoto was charged with possession of illegal narcotics pursuant to La. R.S. 40:967(C) (Possession of a Schedule II Controlled Dangerous Substance: Oxy-codone), La. R.S. 40:968(C) (Possession of a Schedule III Dangerous Substance: HydroCodone), and La. R.S. 40:1238.1 (Possession of a Legend Drug Without a Prescription: Carisoprodol). He filed a Motion to Suppress the recovered drugs on the ground that they were obtained without a valid search warrant, thus violating his rights under the Louisiana and the United States Constitutions.
 

 After a hearing on the Motion to Suppress, the trial judge found the officers were probably in good faith in commencing the inventory search, but also found they ^exceeded the scope of a true inventory search by opening and searching the blue pill bottle, which the court found did not have any inherent value for inventory purposes. Due to this finding, the trial judge granted the defendant’s Motion to Suppress the pills. The state orally gave notice of its intent to seek writs, and after an extension, filed its application to the court of appeal on August 26, 2009. The Louisiana First Circuit Court of Appeal denied the state’s writ application on October 26, 2009. Thereafter, the state filed a writ application with this court, which was granted on March 5, 2010.
 
 State v. Esco-to,
 
 09-2581 (La.3/5/10), 28 So.3d 998.
 

 DISCUSSION
 

 Article 1, Section 5 of the Louisiana Constitution of 1974, and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. As a general rule, a search warrant is required in order for a search to be constitutionally permissible. However, several exceptions to the warrant requirements in certain circumstances have developed over time.
 
 State v. La-Rue,
 
 368 So.2d 1048 (La.1979). In
 
 South Dakota v. Opperman,
 
 the U.S. Supreme
 
 *1163
 
 Court recognized one such exception when it held inventory searches of automobiles “pursuant to standard police procedures are reasonable.” 428 U.S. 364, 372, 96 S.Ct. 3092, 3098-99, 49 L.Ed.2d 1000 (1976). The Court further stated, “this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents.”
 
 Id.
 
 at 373, 96 S.Ct. at 3099. The Court recognized these inventory procedures developed in response to three distinct needs, “the protection of the owner’s property while it remains in police custody, the protection [sic] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.”
 
 Id.
 
 at 369, 96 S.Ct. at 3097 (citation omitted).
 

 |Jn Louisiana, we have adopted the United States Supreme Court’s reasoning on the issue of inventory searches.
 
 La-Rue,
 
 368 So.2d at 1050. Additionally, in
 
 State v. Jewell,
 
 this court held, “[a]n essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search.” 338 So.2d 633, 638 (La.1976) (quoting
 
 Inventory Search of Impounded Vehicles,
 
 48 A.L.R.3d 537, 544 (1973)). This court examines inventory searches under the totality of the circumstances to determine if a truly valid inventory search has taken place.
 
 LaRue,
 
 368 So.2d at 1051. Traditionally, this court has considered the following factors in determining whether a true inventory search has taken place: (1) Whether the vehicle could not have remained safely where it was located; (2) whether the search was conducted in the field; (3) whether a tow truck was called before the search commenced; (4) whether formal impoundment procedures were followed; (5) whether the vehicle operator was asked if he consented to a search, if the car contained any valuables, or if he would consent to a waiver of the protections afforded by an inventory search; (6) whether the operator was given an opportunity to make arrangements for someone to pick up the vehicle for them.
 
 State v. Sims,
 
 426 So.2d 148, 153 (La.1983);
 
 State v. Crosby,
 
 403 So.2d 1217, 1219 (La.1981);
 
 State v. Jemigan,
 
 390 So.2d 1306, 1307 (La.1980);
 
 State v. Hardy,
 
 384 So.2d 432, 434 (La.1980);
 
 State v. Killcrease,
 
 379 So.2d 737, 739 (La.1980);
 
 LaRue,
 
 368 So.2d at 1051;
 
 State v. Schmidt,
 
 359 So.2d 133, 136 (La.1978).
 

 The issue before this court is whether a valid inventory search took place. To determine this, we must consider, under the totality of the circumstances, whether the inventory search was conducted in good faith and whether the officers exceeded the scope of a valid inventory search. The trial court found the inventory search was [¿initiated in good faith at the time of the stop; however, relying on
 
 State v. Jewell,
 
 the court also found, under the totality of the circumstances, that the officers went beyond the scope of a true inventory search by opening the non-prescription pill bottle. The trial court reasoned an innocuous bottle in and of itself does not rise to the level of having any inherent value for inventory purposes, while noting if a prescription pill bottle was recovered, it would have been necessary to determine its contents because prescription medication does have inherent value.
 

 In
 
 Jewell,
 
 officers came across a running vehicle protruding into the center of a narrow two-lane street with the driver asleep in the driver’s seat.
 
 Jewell
 
 338 So.2d at 635. After arresting the driver, the officers conducted an inventory search
 
 *1164
 
 of the vehicle.
 
 Id.
 
 During the search, the officers discovered a small Excedrin bottle in an open ashtray.
 
 Id.
 
 The officers opened the bottle and discovered non-illegal pills and a piece of plastic, which was later found to contain POP.
 
 Id.
 
 In
 
 Jewell,
 
 the court found the so-called inventory search seemed to have been solely for the purpose of obtaining criminal evidence and not for safeguarding the property in the vehicle, as all things seized were turned over to the crime laboratory for analysis.
 
 Id.
 
 at 639. In determining the inventory search was not conducted in good faith, the
 
 Jewell
 
 court noted the record was silent on whether the tow truck was called before or after the search took place, the driver, though present, was not consulted at all for any purpose, and no inventory forms were completed or kept for future reference to safeguard the defendant’s property.
 
 Id.
 
 The court also noted that an Excedrin bottle found in a car ashtray was an unlikely place for anything of value, and opening it was inconsistent with the purpose and permissible scope of a true inventory search.
 
 Id.
 
 The court concluded “the facts surrounding the search which produced the PCP support a conclusion that the police officers were searching for incriminating evidence.”
 
 Id.
 
 at |7640. The court also indicated, because they found an invalid inventory search, they did not consider alternative arguments of the defendant predicated on a valid inventory search, including whether the search’s “scope (at least, insofar as the removal of the contents of the ashtray and insofar and the inspection of the bottle’s contents) exceeded the purpose for which authorized [sic].”
 

 The instant case is distinguishable from
 
 Jewell
 
 for several of reasons. When reviewing the instant case under the totality of the circumstances and examining the relevant factors listed above, the inventory search was a valid safeguarding procedure and not a subterfuge for a warrantless search without probable cause as the court found in
 
 Jewell.
 
 The officers in the instant case established, and the trial court agreed, the vehicle’s location posed a potential danger for traffic. Although the search was conducted in the field, the tow truck was called before the inventory search commenced. Further, during the search, Officer Stevens testified he filled out the standard wrecker inventory sheet documenting all of the belongings inside the vehicle, while Officer Maricelli was conducting the search.
 
 [3]
 
 Also, Officer Mar-icelli asked the defendant if the vehicle contained any valuables, to which the defendant indicated there were some tools in the car. Further, before the search, the officers asked the defendant if there was any way he could have someone either pick up his vehicle or move it to a place where it would not be a safety hazard. After the defendant indicated he had no phone and could not remember any numbers to call, the officers decided it was necessary to impound the vehicle. By contrast, in
 
 Jewell,
 
 it was not known if the tow truck was called before the search, there was no evidence of any inventory form or procedure, the officers did not give the driver an opportunity |sto have someone pick up or move his car, and the officers did not ask if there were any valuables in the vehicle. Keeping the above factors in mind and examining this case under the totality of the circumstances, we find this case is distinguishable from
 
 Jewell,
 
 and in this instance, the officers’ search was a good faith inventory search conducted according to procedure.
 

 
 *1165
 
 The trial court in the instant matter focused on the language in
 
 Jewell
 
 indicating that an Excedrin bottle was an unlikely-place for anything of value, and the search of such was “inconsistent with the purpose and permissible scope of a true inventory search.”
 
 Jewell
 
 338 So.2d at 639. However, this language from the court in
 
 Jewell
 
 was merely dicta, as the court indicated it was not considering whether the search of the pill bottle was beyond the scope of a valid inventory search.
 
 Id.
 
 at 640. The trial court in the instant case compared the unmarked blue pill bottle to the Excedrin bottle in
 
 Jewell
 
 and to packets of aluminum foil found during an invalid inventory search in
 
 State v. Rome.
 

 [4]
 

 These cases did not specifically hold the search of any closed container was beyond the scope of a valid inventory search, but held under the totality of circumstances there was an invalid inventory search in each case. In fact, in both cases, there were multiple other factors relied on to invalidate the inventory searches.
 
 [5]
 
 Seemingly, the major factor relied on in the instant case to invalidate the search was the opening of the pill bottle found in the center cup holder. |9Thus, we find that Officers Stevens and Maricelli were conducting a valid, good faith inventory search, and were not using the search as “a ruse for general rummaging in order to discover incriminating evidence.”
 
 Wells,
 
 495 U.S. at 4, 110 S.Ct. at 1635.
 

 Having found that the officers commenced the inventory search in good faith, we now consider whether the trial court was correct in deciding that the officers exceeded the scope of a valid inventory search by opening the unmarked pill bottle. Since the above cases were decided, the U.S. Supreme Court has handed down several opinions regarding inventory searches and their scope. First, in
 
 Illinois v. Lafayette,
 
 the U.S. Supreme Court held it is not unreasonable for a police department to search any and all containers pursuant to an inventory search of a persons belongings, as long as it was part of a routine procedure or policy. 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). While
 
 Lafayette
 
 dealt with an inventory search of a person subsequent to incarceration, the principles are relevant and have been applied in inventory searches of automobiles as well. See
 
 Florida v. Wells,
 
 495 U.S. 1, 4,110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990);
 
 Colorado v. Bertine,
 
 479 U.S. 367, 374-75, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987).
 

 In
 
 Colorado v. Bertine,
 
 the Unites States Supreme Court upheld the search of metal canisters found in a closed backpack during a vehicle inventory search. 479 U.S. 367, 107 S.Ct. 738. The Court in
 
 Bertine
 
 stated, “reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise
 
 *1166
 
 equally reasonable rules requiring a different procedure.”
 
 Id.
 
 at 374, 107 S.Ct. at 742. The Court found the Supreme Court of Colorado’s requirement, that police should weigh the strength of the individual privacy interest in a closed container against the possibility that the container might contain valuable or dangerous items, was contrary to the |10Court’s jurisprudence.
 
 Id.
 
 at 374-75, 107 S.Ct. at 742-43. The Court stated, “it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.”
 
 Id.
 
 at 375, 107 S.Ct. at 743 (quoting
 
 Lafayette,
 
 462 U.S. at 648,103 S.Ct. at 2610).
 

 Further, in
 
 Florida v. Wells,
 
 the United States Supreme Court found the Supreme Court of Florida interpreted
 
 Bertine
 
 too broadly when it stated, “[t]he police under
 
 Bertine
 
 must mandate either that all containers will be opened during an inventory search, or that no containers will be opened. There can be no room for discretion.” 495 U.S. at 3, 110 S.Ct. at 1635 (citation omitted). The
 
 Wells
 
 Court indicated that the rationale behind having standardized criteria and an established routine govern the opening of containers found during inventory searches is based on the requirement that inventory searches must not be used as a general rummaging to discover criminal evidence.
 
 Id.
 
 at 4, 110 S.Ct. at 1635. Further, the
 
 Wells
 
 court stated:
 

 [I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical “all or nothing” fashion. “[I]n-ventory procedures serve to protect an owner’s property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.” A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers’ exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.
 

 Wells,
 
 495 U.S. at 4, 110 S.Ct. at 1635 (citation omitted). In Wells, it was found that | nthe police department at issue “had no policy whatsoever with respect to the opening of closed containers encountered during an inventory search,” and as such, the inventory search was not sufficiently regulated to satisfy the Fourth Amendment.
 
 Id.
 
 at 4-5, 110 S.Ct. at 1635. Having adopted the U.S. Supreme Court’s reasoning on the issue of inventory searches in previous decisions,
 
 LaRue,
 
 368 So.2d 1048 (La.1979);
 
 Rome,
 
 354 So.2d 504 (La. 1978);
 
 Jewell,
 
 338 So.2d 633 (La.1976), in order to comply with the recent U.S. Supreme Court jurisprudence, we adopt the Court’s reasoning on the issue of automobile inventory searches in
 
 Wells
 
 and
 
 Bertine.
 

 As previously mentioned, Officer Maricelli found an opaque, unmarked pill bottle, and Officer Stevens testified, “If it’s anything like that, we are instructed to open it.” Thus, the pill bottle in the instant case was searched pursuant to the Covington Police Department’s practice of instructing their officers to search closed containers during inventory searches, as Officer Stevens testified. While it is true
 
 *1167
 
 that, “unconstitutional searches cannot be constitutionalized by standardizing them as a part of normal practice,”
 
 Jewell,
 
 338 So.2d at 640, when discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity, an established routine governing the opening of containers found during inventory searches is acceptable. See
 
 Wells,
 
 495 U.S. at 4, 110 S.Ct. at 1635. As the U.S. Supreme Court stated in
 
 Bertine,
 
 it would be unreasonable to require officers to make these fine legal distinctions between containers during routine work, and “a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.” 479 U.S. at 375, 107 S.Ct. at 743 (citation omitted). As such, because the search of the closed container in this case was required by the department during legitimate |]2inventory searches, the search of the pill bottle was sufficiently regulated and not unreasonable.
 

 The trial court reasoned a non-prescription pill bottle alone does not have any inherent value for the purposes of an inventory search; however, pill bottles, prescription or not, can contain varying prescription medication or small valuables, which brings their search within two of the three purposes behind inventory searches: to safeguard the defendant’s property and to protect police officers from claims of lost or stolen property. People often keep them daily pills in a separate container if they take more than one prescription, and containers such as this can occasionally be used to cany jewelry or other small valuables. Officer Stevens testified he was aware of situations where people keep valuables in pill bottles. Also, because the bottle was opaque and unmarked its contents could not be determined simply from its exterior, making the search necessary to safeguard whatever property was within it. Therefore, because the officers in this matter were instructed by the department to open closed containers with similar characteristics to the subject pill bottle during inventory searches, the search of the pill bottle was reasonable and within the scope of a valid inventory search.
 

 Under the totality of the circumstances in this case, we find the officers conducted a valid, good faith inventory search of the defendant’s car. The officers conducted the search pursuant to department policy and regulation, which is consistent with the purpose of inventory searches. Further, the search of the unmarked pill bottle found in the center cup holder of the vehicle was within the scope of a valid inventory search because the police department instructed the officers to open such containers during inventory searches. As such, the search reasonable under
 
 Wells
 
 and
 
 Bertine.
 
 For these reasons, we find the trial court erred in granting | isthe defendant’s Motion to Suppress the pills in this case.
 

 CONCLUSION
 

 For the foregoing reasons, the pills found during the search of the vehicle were lawfully seized pursuant to a valid inventory search by Officers Maricelli and Stevens. The trial court’s determination that the evidence should be suppressed is hereby reversed and this case is remanded to the trial court for further proceedings not inconsistent with this opinion.
 

 REVERSED AND REMANDED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . Mr. Escoto was only able to produce an international driver's license of some kind. He also admitted to the officers that he had moved to the U.S. from Honduras within the last two years and did not have a passport, green card, or any other document indicating his legal presence in the country.
 

 [2]
 

 . La. R.S. 14:100.13 provides:
 

 A.No alien student or nonresident alien shall operate a motor vehicle in the state without documentation demonstrating that the person is lawfully present in the United States.
 

 B. Upon arrest of a person for operating a vehicle without lawful presence in the United States, law enforcement officials shall seize the driver’s license and immediately surrender such license to the office of motor vehicles for cancellation and shall immediately notify die INS of the name and location of the person.
 

 C. Whoever commits the crime of driving without lawful presence in the United States shall be fined not more than one thousand dollars, imprisoned for not more than one year, with or without hard labor, or both.
 

 [3]
 

 . Officer Stevens testified the inventory form was never executed because the car was not loaded and taken away by the wrecker company due to the arrival of the defendant's girlfriend and the release of the car and all of its contents to her.
 

 [4]
 

 . In
 
 State v. Rome,
 
 this court found that no true inventoiy search had taken place, where the car was safely out of the flow of traffic parked at a service station, where officers did not ask the defendant whether he could make arrangements for his vehicle, and where officers opened packets of aluminum foil, which the court called "innocuous closed containers.” 354 So.2d 504, 506 (La.1978).
 

 [5]
 

 . As previously discussed, in
 
 Jewell,
 
 it was not known if the tow truck was called before the search, there was no evidence of any inventory form or procedure, the officers did not give the driver an opportunity to have someone pick up or move his car, and the officers did not ask if there were any valuables in the vehicle.
 
 Jewell,
 
 338 So.2d 633. In
 
 Rome,
 
 the car was parked in a service station and was not a safety hazard, the officers did not ask if the driver could make arrangements for the car, and the officers did not ask about valuables in the car or if he consented to the search.
 
 Rome,
 
 354 So.2d 504.