JAMES F. McKAY III, CHIEF JUDGE
hOn October 14, 2015, the state filed a bill of information charging defendant with first offense possession of marijuana (R.S. 40:966(E)(1)) and battery of a police officer with injury (R.S. 14:34.2(B)(3)). Defendant appeared with counsel and pled not guilty. The defense filed several pretrial pleadings including motions to suppress- the statement and evidence and moved for a preliminary: examination. The trial court denied the motions to suppress and found probable cause to sustain the charges. The defense filed a motion to reopen the suppression and probable..cause determinations, which the court granted. After, rehearing the matter, the trial court granted the motion to.suppress and found insufficient probable, cause. The state’s writ application followed.
STATEMENT OF THE FACTS
At the January 18, 2015 hearing, Louisiana State Trooper Eric Thaxton testified that on September 18, 2015, at approximately 11:10 p.m., he and his partner, Officer Charles Robertson, responded to a *522 call from NOPD dispatch concerning a suspicious vehicle near Elk Street. The dispatcher advised that loud music was emanating from the truck and that a male wearing a red hat was waving a handgun out of the vehicle. Upon their arrival at the scene, the officers observed |Pa Chevrolet truck with dark tinted windows parked with its engine running on Elk Street near Canal. The truck had no license plate and its front windshield was darldy tinted, preventing the officers from viewing its interi- or. Given that the truck matched.the description of the vehicle provided by the dispatcher[1] and the officers’ observations of traffic/registration violations, Trooper Thaxton elected to conduct an investigatory stop.
Trooper Thaxton approached the vehicle and asked the driver, later identified as defendant, to exit. As defendant opened the vehicle’s door, the officers detected the odor of marijuana wafting from inside the truck. Defendant wore a red hat, matching the description of the individual provided by the NOPD dispatch. Defendant told the officers that he had just gotten off of work from the nearby Flax Luxe hair salon. In response to Trooper Thaxton’s explanation concerning the stop and claim that he smelled marijuana, defendant replied that the officers lacked probable cause to detain him and maintained the allegation about the smell of marijuana was false. When asked to produce his driver’s license, defendant requested permission to retrieve the item from the salon. Trooper Thaxton instructed defendant to'check his-wallet for the identification and when he did, Trooper Thaxton observed the license. When Trooper Thaxton confronted defendant about the license, defendant stepped back, turned around and attempted to flee on foot.
Officer Robertson grabbed defendant’s right wrist and defendant responded by punching the officer in the face and kicking him in the knee. Defendant ran across the median and, after he disobeyed Trooper Thaxton’s order to stop, Trooper Thax-ton detonated his Taser, striking defendant and causing him to fall to lathe ground. When defendant got up and started running towards the sidewalk, Trooper Thaxton “tased” him a second time. The second strike sufficiently subdued defendant and officers handcuffed him.
The officers then conducted an inventory search of the truck, during which Trooper Thaxton located a pill bottle containing marijuana inside the center console. Hollowed-out cigars were recovered from the driver’s side door compartment and a cup containing loose tobacco (presumably remoyed from the cigar casings) was found in the center console. The inspection sticker affixed to the windshield appeared fraudulent.
Defendant was placed under arrest for marijuana possession, battery of a police officer and resisting arrest. Traffic citations were issued for the fraudulent inspection sticker, illegal window/windshield tint and the operation of a vehicle without a visible license plate. Officer Robertson testified and corroborated the account provided by Trooper Thaxton concerning the encounter with defendant.
Pursuant to the defense motion which revealed that it did not possess a recording of the dispatch to cross-examine the officers at the initial hearing, the court recalled the matter. At the hearing conducted September 16, 2016, defense counsel confronted Trooper Thaxton with his initial police report narrative which provided:
On 9-18 2015 at approximately 2310 hours, Troopers Thaxton and Robertson *523 responded to a call by NOPD dispatch for a suspicious black pick-up seen near Elk Place and Canal traveling river-bound and NOPD advised that the black truck was reported to be playing loud music while a black male wearing a red hat waving a handgun out of the vehicle. Dispatch advised there were four black males inside the vehicle according to complainant. There was no license plate or state information given by dispatch.
|4A separate section of the report which set out the initial complaint,, also provided, “There was no license plate or state license—state information given by dispatch.” In fact, the recording of the dispatch provided a partial license plate B690. Accordingly, the fact that defendant’s vehicle did not have any visible plates, would have excluded it from that which was described in the dispatch. In addition, the vehicle was parked not “traveling” as - set out in the dispatch and defendant was alone in the truck as opposed to being accompanied by three other individuals. Defendant also maintains that his truck was gray, not black. The report indicated that the officers made the stop within five minutes of receiving the dispatch.
On October 18, 2016, the parties declined the opportunity, to place additional argument on the record. The court found no probable cause and granted the motion to suppress.
DISCUSSION
When reviewing trial court decisions on motions to suppress, their determinations of fact are reviewed for abuse of their great discretion, and their legal decisions are reviewed de novo. State v. Candebat, 13-0780, pp. 6-7 (La.App. 4 Cir. 1/30/14), 133 So.3d 304, 306 (citing State v. Wells, 08-2262 (La. 7/6/10), 45 So.3d 577).
The 14th Amendment to the U.S. Constitution and La. Const. Art. 1, § 5 prohibit unreasonable searches and seizures. State v. Surtain, 09-1835, p. 6 (La. 3/16/10), 31 So.3d 1037, 1043. In order to enforce the mandates of the Fourth Amendment and La. Const. Art. 1, Sec. 5, and discourage police misconduct, derivative evidence obtained pursuant to an unconstitutional search or seizure is inadmissible. State v. Hamilton, 09-2205, p. 3 (La. 5/11/10), 36 So.3d 209, 211. Generally, a search and seizure conducted without a warrant issued on probable Rcause that a crime has been committed is per se unreasonable unless justified by one of the narrowly drawn exceptions to the warrant requirement. Id., 09-1835, p. 7, 31 So.3d at 1043.
One exception to the warrant requirement known as a “Terry stop” (because it was established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) is codified in La. C.Cr.P. art. 215.1.
Pursuant to La. C.Cr.P. art. 215.1, “[a] law epforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and máy démand of him his name, address, and an explanation of his actions.” See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). “Reasonable suspicion” to stop is something less than probable cause for arrest; a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Williams, 2007-0700, p. 11 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1111. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails *524 and consider the totality of the circumstances in determining .whether reasonable; suspicion exists. Id. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop., Id. The officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be. given to the experience of the officers present at the time of the incident, Id., 2007-0700 atp. 12, 977 So.2d at 1111.
State v. Marzett, 09-1080, pp. 5-6 (La.App. 4 Cir. 6/9/10), 40 So.3d 1204, 1208.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of legal violation, such as a traffic violation, occurred or is about to occur before stopping the vehicle. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to | fithe inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La. 3/13/98), 708 So.2d 1048. The determination of reasonable suspicion for an investigatory stop (or probable cause for arrest) does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action. State v. Landry, 98-0188 (La. 1/20/99), 729 So.2d 1019. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer’s intent. Whren v. United States, supra.
The Louisiana Supreme Court cited Whren in State v. Lopez, 00-0562 (La. 10/30/00), 772 So.2d 90. In Lopez, the Court, stated, “[wjithout regard to .the trooper’.s subjective intent, respondent’s speeding above the posted limit gave the officer an objective probable cause basis to pull over the vehicle for a traffic violation.” Id, at 92. Quoting Whren, the Court specifically found “[Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.” Id.
Similarly, in State v. Kalie, 96-2650, p. 3 (La. 9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court stated:
That Officer Brashier was conducting a drug interdiction patrol when' he pulled over the Camry had no bearing on the legality of the initial stop for improper lane use. Whren, 517 U.S. at [806], 116 S.Ct. at 1774 (“the fact that the officer 'does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the- circumstances, viewed objectively, justify that action.”) (quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L,Ed.2d 168 (1978)),
In this case, the trial court tacitly concluded that Trooper Thaxton testified falsely when he described the circumstances precipitating the stop. However, notwithstanding the inaccurate recollection of the events preceding the encounter 17when he testified at the suppression hearing, the state presented uncontested evidence demonstrating that independent grounds existed for the stop. Specifically, regardless of whether Trooper Thaxton alerted to the vehicle based on the dispatch, given the absence of a visible license plate and the illegally tinted windshield, the officer could have (at a minimum) conducted an investigatory stop based on the traffic infraction. See Whren, supra. Notably, not only did Trooper Thaxton describe *525 the independent grounds for the stop, but the officer also issued several citations based on the violations,[2]
Upon making the stop, the suspicion almost certainly flowered into probable cause[3] to arrest defendant when he smelled the strong odor of marijuana emanating from the vehicle. See State v. Sherman, 05-0779, pp. 17-18 (La. 4/4/06), 931 So.2d 286, 297 (“Where the police have probable cause to arrest, and conduct a search of that person incident to arrest, the fruits of that search may not be suppressed merely because the police did not intend to arrest the suspect for the offense for which probable cause existed.”). In this situation, the officer’s failure to accurately relate the contents of the dispatch call which precipitated, the stop did |snot render the police action illegal. Upon the acquisition of probable cause to arrest, the ensuing warrantless inventory search of the vehicle yielding the contraband was permissible[4] although seizure of the marijuana found in the truck, which resulted only in a misdemeanor charge, does not appear the focal point of defendant’s motion to suppress.
CONCLUSION
For the foregoing reasons, we grant the state’s writ application and reverse the trial court’s ruling finding no probable cause and granting defendant’s motion' to suppress/
WRIT GRANTED
BELSOME, J., DISSENTS

. As discussed below, that assertion was undermined at the subsequent hearing.

. Defendant does not seriously contest the existence of the traffic violations. Rather, he maintains the alleged offenses are mere after- • thought, and are not germane to the issue of whether or not the officers initial approach, encounter, and detention of defendant, was unconstitutional.

. This Court has stated that probable cause to arrest exists:
when the detaining officer has articulable knowledge of particular facts sufficient to reasonably suspect the detained person of criminal activity. Beck v. Ohio, 379 U.S, 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v, Buckley, 426 So.2d 103, 107 (La. 1983); see also State v. Parker, 06-0053, p. 2 (La. 6/16/06), 931 So.2d 353, 355 (probable cause to arrest exists when the facts and circumstances known to the officer, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed an offense).
State v. Marley, 06-0317, p. 5 (La.App. 4 Cir. 11/8/06), 945 So.2d 808, 812. Moreover, the totality of the circumstances must be considered' to determine the existence of probable cause. Id.

.Inventory searches constitute a well-defined exception to the warrant requirement established by the Fourth Amendment to the U.S. Constitution and Article' 1, Section 5 of the Louisiana Constitution of 1974. State v. Escoto, 09-2581 (La. 7/6/10), 41 So.3d 1160. In Louisiana, the reviewing court examines inventory searches under the totality of the cir- ’ cumstances to determine if a truly valid inventory search has taken place, Id., 09-2581, p. 5, 41 So.3d at 1163.